**Sen v GR Realty Holdings LLC**

2025 NY Slip Op 32012(U)

June 5, 2025

Supreme Court, New York County

Docket Number: Index No. 157812/2020

Judge: Lynn R. Kotler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. LYNN R. KOTLER**                          PART          08

*Justice*

-------------------------------------------------------------------X

ANNABEL SEN,

                              Plaintiff,

                - v -

GR REALTY HOLDINGS LLC, 15 UNION SQUARE WEST
CONDOMINIUM, BROWN HARRIS STEVENS
RESIDENTIAL MANAGEMENT, LLC, HENRIQUE
DUBUGRAS and PEDRO FRANCESCHI,

                      Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157812/2020 |
| MOTION DATE | 12/10/2024, 12/10/2024, 12/10/2024 |
| MOTION SEQ. NO. | 004 005 006 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 166, 167, 170, 171, 172, 173, 174, 175, 176, 177, 234, 235, 240
were read on this motion to/for                       **JUDGMENT - SUMMARY**        .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 168, 178, 179, 180, 181, 182, 183, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 223, 224, 225, 226, 236, 237, 238, 239
were read on this motion to/for           **SUMMARY JUDGMENT (AFTER JOINDER)**   .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 169, 184, 185, 186, 220, 221, 222, 227, 228, 229, 230, 231, 232, 233, 241
were read on this motion to/for           **SUMMARY JUDGMENT (AFTER JOINDER)**   .

## INTRODUCTION

In this personal injury action, plaintiff Annabel Sen alleges she sustained serious injuries when, shortly before 2:00 pm on January 25, 2020, she was struck by a heavy wooden lounge chair that was blown by the wind off the terrace of a 12th floor penthouse apartment (the "apartment") located at 15 Union Square West (the "building") in Manhattan. The building is owned by defendant 15 Union Square West Condominium ("15 Union") and managed, pursuant to a management agreement with 15 Union, by Brown Harris Stevens Residential Management LLC ("BHS" and, together with 15 Union, the "Condo Defendants"). The apartment is owned by

157812/2020   SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No.  004 005 006

Page 1 of 12

1 of 12

defendant GR Realty Holding LLC ("GR") and, at the time of the subject accident, was rented to defendants Henrique Dubugras and Pedro Franceschi (the "Tenants"). In her complaint, Sen asserts a single cause of action for negligence against all defendants. The Condo Defendants, GR, and the Tenants each assert cross-claims against all co-defendants for common law contribution and indemnification, and GR asserts additional cross-claims against the Tenants for contractual indemnification and breach of contract for failure to procure insurance.[1]

GR now moves pursuant to CPLR 3212 for partial summary judgment on its contractual cross-claims against the Tenants (MOT SEQ 004). The Tenants oppose the motion and separately move pursuant to CPLR 3212 for summary judgment dismissing the complaint and all cross-claims against them (MOT SEQ 006), which motion is in turn opposed by plaintiff, GR, and the Condo Defendants. The Condo Defendants likewise move pursuant to CPLR 3212 for summary judgment dismissing the complaint and all cross-claims against them (MOT SEQ 005), which motion is opposed by plaintiff, GR, and the Tenants. For the reasons that follow, GR's motion is denied, and the Tenants' and Condo Defendants' motions are granted in part.

## DISCUSSION

On a motion for summary judgment, the proponent bears the initial burden of making a prima facie showing that it is entitled to summary judgment as a matter of law, providing sufficient evidence that no material issues of triable fact exist (*see Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc.*, 36 NY3d 69, 74 [2020]; *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Once met, the burden shifts to the opposing party to "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *see De Lourdes Torres v Jones*, 26 NY3d 742, 763 [2016]). However, if the proponent fails to make out its prima facie case for summary judgment, its motion must be denied regardless of the sufficiency of the opposing papers (*Alvarez*, 68 NY2d at 324; *Ayotte v Gervasio*, 81 NY2d 1062 [1993]). Summary judgment is a drastic remedy that should not be granted where there is any doubt as to the existence of a

---

[1] The Condo Defendants also asserted cross-claims against the Tenants for contractual indemnification and breach of contract for failure to procure insurance, but those cross-claims were dismissed by decision and order dated September 13, 2022.

**157812/2020 SEN, ANNABEL vs. GR REALTY HOLDINGS LLC**
**Motion No. 004 005 006**

Page 2 of 12

triable issue, and the court's function on these motions is limited to "issue finding," not "issue determination" (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503, 505 [2012]).

## I. The Tenants' & GR's Motions (MOT SEQ 006 & 004)

### a. Negligence

It is well established that "[a] tenant has a duty to maintain its premises in a reasonably safe condition" (*Nyambuu v Whole Foods Mkt. Grp., Inc.*, 191 AD3d 580, 581 [1st Dept. 2021]; *see Branch v SDC Discount Store, Inc.*, 127 AD3d 547, 547 [1st Dept. 2015]; *Williams v Esor Realty Co.*, 117 AD3d 480, 480 [1st Dept. 2014]). "Liability can [thus] be imposed upon . . . a lessee who creates a defective condition on the property, or had actual or constructive notice of the defective condition" (*Johnson v City of New York*, 102 AD3d 746, 748 [2nd Dept. 2013]; *see Williams*, 117 AD3d at 481). "Constructive notice is generally found when the dangerous condition is visible and apparent, and exists for a sufficient period to afford a defendant an opportunity to discover and remedy the condition" (*Ross v Betty G. Reader Revocable Tr.*, 86 AD3d 419, 421 [1st Dept. 2011]).

The Tenants submit, *inter alia*, their own deposition testimony and affidavits; the deposition testimony of the other parties' various witnesses; a copy of the lease, dated October 2019, that they executed with GR for the subject apartment (the "Lease"); and the affidavit of their expert meteorologist, Dillon Turner, together with Turner's expert report. By these submissions, the Tenants demonstrate that they rented the apartment from GR fully furnished and, by the express terms of the Lease, were prohibited without GR's prior written consent from removing or changing the location of the furniture in the apartment, as well as from building in, adding to, changing or altering the apartment in any way. They further demonstrate that, prior to the date of the subject accident, they had spent a total of approximately three weeks in the apartment, had made only sparing use of the terrace, and had neither used nor moved the chair involved in plaintiff's accident. Thus, to the extent plaintiff alleges the particular chair involved in the accident was defective because it was unsuitable for use on a windy terrace unless secured in place in some manner, the Tenants demonstrate, *prima facie*, that they did not create the defective condition alleged, as they did not select or purchase the subject chair, did not choose the location of its placement on the terrace or the manner of its installation, and did not use or interact with the chair prior to plaintiff's accident (*cf. Barr v Inc. Vill. of Atl. Beach*, 278 AD2d

157812/2020 SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No. 004 005 006

Page 3 of 12

3 of 12

188, 188–89 [2nd Dept. 2000] [defendant demonstrated she did not create or have actual or constructive notice of defective condition of beach umbrella that blew away in the wind and struck plaintiff, where umbrella had been imbedded in the sand by a co-defendant for her use].

The Tenants further demonstrate, *prima facie*, that they lacked either actual or constructive notice of such an alleged defect, which was neither visible nor apparent to them. Specifically, their submissions establish that they were unaware of any prior instances of the subject chair or any of the other furniture on the terrace being moved by the wind, let alone being blown over the terrace's three-and-a-half-foot tall parapet wall, nor were they aware of any prior instances of furniture being blown off any of the building's other terraces.

Further, to the extent plaintiff alleges the Tenants were negligent because the prevailing weather conditions on the date of the accident were so unusual or extraordinary as to have prompted a reasonable person to secure or remove the terrace furniture, the Tenants demonstrate, *prima facie*, that they lacked actual or constructive notice of any impending dangerous weather event. Specifically, the deposition testimony submitted establishes that the Tenants received no notices warning of inclement weather, and the Tenants' expert meteorologist avers that, on the date of the accident, the weather was unremarkable and there were no high wind or other weather advisories, warnings, or other notices issued or in effect for New York City.

None of the other parties raise a triable issue of fact in opposition. Plaintiff's contention that cursory inspection would have revealed that the subject chair was not secured in place is unavailing. Logic dictates that the absence of a tether or other device securing the chair to the terrace could be a visible and apparent defect only if, absent such a restraint and given normal wind conditions, the chair was obviously unsuitable for use on the terrace because it was at risk of being blown off the terrace by the wind. It is undisputed, however, that the chair was heavy and never previously observed to have been moved by the wind. Thus, even if it is ultimately proven that the chair was unsuitable for use on the subject terrace without being secured in place, plaintiff submits no evidence sufficient to raise a triable issue of fact as to whether such a defect was or should have been apparent to the Tenants. Moreover, as renters of a private, fully furnished residential apartment, the Tenants had no duty to inspect the terrace furniture for hidden and latent defects already present when they took possession (*see Albert M. Watson*

157812/2020  SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No. 004 005 006

Page 4 of 12

*Photography Inc. v Kartheiser*, 227 AD3d 637, 638 [1st Dept. 2024] [unlike owners of multiple-dwelling buildings and commercial and other institutional property owners, the owner of a single-family residential apartment does not have a duty to inspect for latent defects). For the same reasons, the emphasis given by both plaintiff and GR to the mere fact that the Tenants were in possession of the apartment at the time of the accident is misplaced, as possession alone is insufficient to prove negligence under a theory of premises liability absent evidence that the party to be held liable created the defective condition or had actual or constructive notice thereof (*see Williams*, 117 AD3d at 481; *Johnson*, 102 AD3d at 748).

Also unavailing is plaintiff's contention, relying on the affidavit of her own expert meteorologist, Kevin Williams, that "the criteria for a wind advisory was met at the time of the incident, and an advisory should have been issued by the National Weather Services." Regardless of the truth of this assertion, it is insufficient to create a triable issue of fact as to whether the Tenants had notice of impending dangerous weather because it remains undisputed that no wind advisory was in fact issued or in effect at the time of plaintiff's accident. Similarly unconvincing is the Condo Defendants' contention that the Tenants were negligent in failing to seek GR's permission to move the terrace furniture indoors to avoid the allegedly foreseeable risk that a strong gust of wind would lift the chair and propel it off the terrace. Again, it is undisputed that there were no prior warnings of any impending extraordinary or unusual wind conditions on the date of the accident. To the extent the Condo Defendants mean to suggest it was negligent to keep the terrace furniture on the terrace even under normal weather conditions, they are merely repackaging plaintiff's conclusory and unsupported contention that the lack of a device securing the chair to the terrace was a defect that was or should have been visible and apparent to the Tenants.

Plaintiff's invocation of the doctrine of res ipsa loquitor is likewise insufficient to defeat summary judgment in the Tenants' favor because the doctrine is inapplicable under the circumstances of this case, at least with respect to the Tenants (*see Bunn v City of New York*, 180 AD3d 550, 551 [1st Dept. 2020] [plaintiff could not survive summary judgment by invoking res ipsa in circumstances where the doctrine did not apply]). Res ipsa is a form of circumstantial evidence that creates a permissible inference of negligence resulting from an occurrence that would not ordinarily take place without someone's negligence (*Tora v GVP AG*, 31 AD3d 341,

157812/2020  SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No.  004 005 006

Page 5 of 12

5 of 12

342 [1st Dept. 2006]; *Nesbit v N.Y.C. Transit Auth.*, 170 AD2d 92, 96 [1st Dept. 1991]). To submit a case to a jury on a theory of res ipsa requires plaintiff to establish that (1) her accident was of a type that does not occur in the absences of negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendants; and (3) it must not be due to any voluntary action or contribution on the part of plaintiff (*Tora*, 31 AD3d at 342; *Mejia v New York City Tr. Auth.* 291 AD2d 225, 227 [1st Dept. 2002]).

Here, the second element of res ipsa is not satisfied with respect to the Tenants because they did not "share[ ] exclusive control over the [terrace furniture] with [the other defendants] to such a degree that [their] failure to fulfill [their] responsibilities constitutes a rational explanation for the occurrence of this accident" (*Hodges v Royal Realty Corp.*, 42 AD3d 350, 352 [1st Dept. 2007]). In determining the issue of exclusive control "one must look to the true nature of [the Tenants'] relationship with [the other defendants] in terms of the relative control each exercised over the [terrace furniture] prior to and at the time of the accident" (*id.*). Here, as already discussed, the Tenants did not select, purchase, determine the placement of, or install the terrace furniture, all of which was done by or on behalf of GR. Moreover, the Tenants were contractually prohibited from relocating the terrace furniture or making any modifications to secure it in place without GR's prior permission. As such, while the Tenants were technically in possession of the terrace furniture as the renters of the apartment, they had nothing to do with the decisions regarding its selection, placement, and the manner of its installation as would "warrant the conclusion they did something, or failed to do something, that caused this accident" (*id.*).

Therefore, the Tenants' motion is granted to the extent it seeks summary judgment dismissing plaintiff's negligence claim against them. Because the Tenants establish that they were not negligent, their motion is likewise granted to the extent it seeks summary judgment dismissing the cross-claims against them for common law contribution and indemnification (*see Glaser v M. Fortunoff of Westbury Corp.*, 71 NY2d 643, 646–47 [1988]; *Herrero v 2146 Nostrand Ave. Assocs., LLC*, 193 AD3d 421, 423 [1st Dept. 2021]).

b. GR's Contractual Indemnification Cross-Claim

Section 47 of the Lease provides for the Tenants' indemnification of GR from and against "any and all claims . . . arising wholly or in part from any act, omission or negligence of

157812/2020  SEN, ANNABEL vs. GR REALTY HOLDINGS LLC                    Page 6 of 12
Motion No.  004 005 006

6 of 12

Tenant[s]." The Tenants contend this language requires proximate causation to trigger their indemnification obligation, and thus a finding that they were negligent or otherwise legally at fault for plaintiff's injuries, while GR argues that all that is required is "but for" causation.

While the phrase "arising out of" is "ordinarily understood to mean originating from, incident to, or having connection with" (*Maroney v New York Cent. Mut. Fire Ins. Co.*, 5 NY3d 467, 472 [2005] [internal quotation marks omitted]), and is thus usually interpreted to require only "but for" causation, the Court of Appeals has held that "'but for' causation cannot be partial," and thus "the[ ] words—'in whole or in part'—can *only* modify 'proximate cause'" (*Burlington Ins. Co. v NYC Transit Auth.*, 29 NY3d 313, 322 [2017] [emphasis added]). As such, the Lease's provision for indemnification of claims "arising *wholly or in part* from any act, omission or negligence of Tenant[s]" must be understood to describe claims proximately caused by the Tenants' negligent acts or omissions (*see id.* at 321, 325; *see also Ruisech v Structure Tone Inc.*, 208 AD3d 412, 415–16 [1st Dept. 2022] [lease provision for indemnification against claims "arising from any act, omission or negligence of any Tenant Parties" was subject to "a negligence trigger" and thus was not triggered given that tenant was held to be free from negligence). Here, as already discussed, the Tenants have established they were not negligent. As such, the indemnification provision of the Lease was not triggered.

Moreover, even were the court to adopt GR's interpretation that the Lease describes only "but for" causation, and thus requires indemnification for claims arising from any act or omission of the Tenants, regardless of negligence, the result would be the same. The Tenants' evidence establishes that plaintiff's accident did not arise from any act or omission on their part, and no triable issue of fact has been raised in that regard.

Therefore, the Tenants' motion is granted to the extent it seeks summary judgment dismissing GR's cross-claim for contractual indemnification. For the same reasons just discussed, GR's motion (MOT SEQ 004) is denied to the extent it seeks summary judgment in GR's favor on the contractual indemnification cross-claim.

### c. GR's Breach of Contract Cross-Claim

The Tenants' motion is denied to the extent it seeks summary judgment dismissing GR's breach of contract cross-claim for failure to procure insurance. Section 33 of the Lease relates to

157812/2020 SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No. 004 005 006

Page 7 of 12

7 of 12

"Insurance." Subsections 33(C) and (D) and section 76 of the Lease rider require the Tenants to obtain general liability and umbrella insurance and to list GR as an additional insured on those policies. The Tenants submit no evidence demonstrating that they procured the required insurance. They nevertheless argue that summary judgment should be granted in their favor on this cross-claim because any failure to procure insurance did not result in any damages to GR (*see Nicholson v Sabey Data Ctr. Props., LLC*, 205 AD3d 620, 622 [1st Dept. 2022]; *New York City Hous. Auth. v Merchants Mut. Ins. Co.*, 44 AD3d 540, 542 [1st Dept. 2007]). Specifically, the Tenants contend the additional insured coverage they were required to obtain for GR was identical in scope to their contractual indemnification obligation, and thus, even if they had maintained the required insurance policies, those policies would not have afforded coverage to GR with respect to plaintiff's claims for the same reasons that their contractual indemnification obligation was not triggered. This contention is unavailing.

The Lease does not expressly state the scope of the additional insured coverage the Tenants were obligated to procure for GR. The Tenants can point to subsection 33(B), which reiterates their indemnification obligations, stating, *inter alia*, that "Tenant[s] must pay for damages suffered and reasonable expenses of [GR] relating to any claim arising from any act, omission or neglect by Tenant[s]." Reading section 33 of the Lease as a whole, this subsection could be taken to imply that the scope of the required additional insured coverage was intended to be coextensive with the Tenants' contractual indemnity obligation. However, in subsection 33(C), immediately preceding the requirement that the Tenants procure and maintain the requisite insurance, the Lease refers to a broader indemnity obligation, stating that the Tenants shall indemnify GR against all liability, penalties, losses, damages, expenses, suits and judgments "arising from injury during the term of this Lease to person or property of any nature and also from any matter growing out of the occupation of the Apartment, provided however that such is not the result of [GR]'s gross negligence or wrongful acts . . . ." This language could be understood to imply that the required additional insured coverage was to be broader in scope than the Tenants' contractual indemnity obligation. There is thus an ambiguity in the contract language and a triable issue of fact as to the intent of the contracting parties with respect to the scope of the additional insured coverage the Tenants were obligated to procure.

157812/2020  SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No.  004 005 006

Page 8 of 12

Therefore, the Tenants' argument that the cross-claim for failure to procure insurance should be dismissed for lack of damages is unavailing, "since it has not yet been determined whether [the Tenants'] alleged failure to procure the agreed-upon insurance caused [GR] any losses" (*Coon v WFP Tower B Co. L.P.*, 220 AD3d 407, 408 [1st Dept. 2023]). For the same reason, and because GR has not demonstrated it is free from fault with respect to plaintiff's accident, GR's motion (MOT SEQ 004) is denied to the extent it seeks summary judgment in GR's favor on the cross-claim for failure to procure insurance (*see Gonzalez v DOLP 205 Props. II, LLC*, 206 AD3d 468, 471–72 [1st Dept. 2022]; *Souare v Port Auth. of New York & New Jersey*, 125 AD3d 494, 495 [1st Dept. 2015]).

## II.    The Condo Defendants' Motion (MOT SEQ 005)

The Condo Defendants submit much the same evidence as the Tenants to demonstrate, *prima facie*, that they did not create the alleged defective condition, as they did not select, own, use, place, or install the furniture on the apartment's terrace, nor did they have actual or constructive notice of any defect in the subject chair or dangerous weather condition, as there were no weather advisories in effect on the date of plaintiff's accident and no furniture had ever before been blown by the wind off any of the building's terraces. The Condo Defendants further contend they lacked possession or control of the subject terrace, relying on the condominium's Declaration and By-Laws, pursuant to which GR was granted exclusive use of the terrace. The Condo Defendants' motion is nevertheless denied to the extent it seeks summary judgment dismissing all claims and cross-claims against 15 Union because there are triable issues of fact regarding actual and constructive notice and 15 Union's control over the apartment's terrace.

Pursuant to section 8.6.1 of the condominium's Declaration, the apartment's terrace was classified as a "limited common element" owned by 15 Union. While GR, as the owner of the adjoining residential unit, had an exclusive right to use the terrace, that right was "subject to rights of [15 Union] to regulate its use and to access the Terrace for maintenance, repair and replacement and other uses." Further, pursuant to section 6.9.2.2 of the condominium's By-Laws, 15 Union had the right to require unit owners to obtain 15 Union's consent prior to installing any furniture on the building's terraces. Indeed, 15 Union promulgated written "Terrace Guidelines," a copy of which was submitted by plaintiff in opposition to the motion, pursuant to which the installation of any terrace furniture was made subject to "review by the

157812/2020  SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No. 004 005 006

Page 9 of 12

building architect and approval by the Board of Managers of this Condominium." The Terrace Guidelines further provided that, "[a]s furniture on windy terraces may have a tendency to blow off," unit owners "must consult with the furniture supplier, confirming in writing that the furniture is appropriate for wind-blown terraces." While "[f]urniture [could] not be attached or mechanically fastened to any terrace surface," it could be weighed down or "attached to planters, subject to review and to complying with other requirements" in the Guidelines concerning the installation of planters. To facilitate the review required prior to installation, the Terrace Guidelines required unit owners to submit "[a] furniture layout and furniture specifications," and further provided that any furniture installed without 15 Union's prior approval was subject to removal by the condominium.

Based on the above, there is a triable issue of fact with respect to 15 Union's control over the apartment's terrace furniture. The evidence submitted also raises triable issues as to whether 15 Union approved the furniture on the apartment's terrace and whether it was negligent in doing so, or, if it did not approve the subject furniture, whether it was negligent in failing to require the furniture's removal. Therefore, the Condo Defendants' motion is denied to the extent it seeks the dismissal of all claims and cross-claims as against 15 Union.

The motion is granted, however, to the extent it seeks summary judgment dismissing all claims and cross-claims as against BHS. The Condo Defendants' submit the management agreement between them, which demonstrates, *prima facie*, that BHS, "as property manager . . . was an independent contractor that owed no duty to plaintiff" (*Megaro v Pfizer, Inc.*, 116 AD3d 427 [1st Dept. 2014]). No triable issue of fact is raised in opposition.

A contractor may be held liable in tort to third persons where the contracting party "'launches a force or instrument of harm,' where the plaintiff suffers injury as a result of reasonable reliance on the defendant's continued performance of a contractual obligation, or 'where the contracting party has entirely displaced the other party's duty to maintain the premises safely'" (*id.*, quoting *Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]). Here, no evidence is submitted to demonstrate that BHS launched a force or instrument of harm. Specifically, there is no evidence presented that BHS in any way created or increased the risk of the subject chair being blown off the apartment's terrace (*see Church ex rel. Smith v Callanan*

157812/2020  SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No. 004 005 006

Page 10 of 12

10 of 12

*Indus., Inc.*, 99 NY2d 104, 112 [2002]). Nor is there any claim that plaintiff relied in any way on BHS' performance of its contractual obligations.

The evidence submitted is also insufficient to raise a triable issue as to whether BHS entirely displaced 15 Union's duty to maintain the premises. Indeed, review of the management agreement between the Condo Defendants makes clear the agreement "was [not] sufficiently comprehensive and exclusive so as support a duty running to the plaintiff" (*Baek v Red Cap Servs., Ltd.*, 129 AD3d 752, 754 [2nd Dept. 2015], citing *Ortiz v Gun Hill Mgmt., Inc.*, 81 AD3d 512, 513 [1st Dept. 2011]; *see Megaro*, 116 AD3d at 427; *Caldwell v Gumley-Haft L.L.C.*, 55 AD3d 408 [1st Dept. 2008]). Specifically, pursuant to section 2.10 of the management agreement, BHS lacked "complete and unfettered authority" to approve alterations to the building's residential units, including the installation of furniture on the building's terraces, which authority was retained by 15 Union (*see Ortiz*, 81 AD3d at 513; *Tushaj v 322 Elm Mgmt. Assocs., Inc.*, 293 AD2d 44, 48 [1st Dept. 2002]).

Therefore, the Condo Defendants' motion is granted to the extent it seeks summary judgment dismissing all claims and cross-claims as against BHS.

## CONCLUSION

Accordingly, it is

ORDERED that defendant GR Realty Holding LLC's summary judgment motion (MOT SEQ 004) is denied; and it is further

ORDERED that the motion by defendants 15 Union Square West Condominium and Brown Harris Stevens Residential Management LLC (MOT SEQ 005) is granted to the extent it seeks summary judgment dismissing all claims and cross-claims as against defendant Brown Harris Stevens Residential Management LLC, and the motion is otherwise denied; and it is further

ORDERED that the motion by defendants Henrique Dubugras and Pedro Franceschi is granted to the extent it seeks summary judgment dismissing the complaint, all cross-claims for common-law contribution and indemnification, and defendant GR Realty Holding LLC's cross-

157812/2020 SEN, ANNABEL vs. GR REALTY HOLDINGS LLC
Motion No. 004 005 006

Page 11 of 12

11 of 12

claim for contractual indemnification as against these individual defendants, and the motion is otherwise denied; and it is further

ORDERED that the Clerk shall mark the file accordingly.

This constitutes the Decision and Order of the court.

| 6/5/2025 | |
|---|---|
| **DATE** | **LYNN R. KOTLER, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED    ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |